FILED
2014 Oct-24  AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **MIRANDA BURNS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | **)** | **6:14-CV-00076-KOB** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Comissioner, SSA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On December 22, 2010, the claimant, Miranda Burns, applied for supplemental security income under Title II and Title XVI of the Social Security Act. (R. 9). The claimant alleged disability beginning on January 6, 2011, because of back pain, carpel tunnel syndrome, seizure disorder, rheumatoid arthritis, and a history of migraines; however, at the hearing, the claimant amended the alleged onset date to March 1, 2011. (R. 9). The Commissioner denied the claim both initially and on reconsideration. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on April 23, 2012. (R. 9).

In a decision dated August 24, 2012, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 17). On November 27, 2013, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this

1

court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents two issues: 1) whether the ALJ erroneously rejected a treating medical source opinion; and 2) whether the ALJ properly applied the Eleventh Circuit's pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legals standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legals conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F. 2d at 999. This court does not review the Commissioner's factual determinations de novo. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson V. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions, such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors, "are not medical opinions,... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that

they would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527 (e), 416.927(d). Whether the Claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgement for the of the Commissioner." *Dyer v. Bernhardt*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse the finding as long as substantial evidence in the record supports it.

The court must " scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied upon by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must state with particularity the weight given different medical opinions and the reasons, and the ALJ's failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Where the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, the ALJ commits no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. In applying the pain standard, for the ALJ to discredit the claimant's subjective complaints of pain without explicitly articulating her reasons for doing so is reversible error.

4

*Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V. FACTS

The claimant has a G.E.D. and was twenty-eight years old at the time of the administrative hearing. (R. 16, 41). Her past work experience includes employment as an assembler, painter, and home health aide. (R. 16). The claimant alleged that she was unable to work because of back pain, carpel tunnel syndrome, seizure disorder, rheumatoid arthritis, and a history of migraines. (R. 12).

*Physical Limitations*

In 2005, the claimant was diagnosed by a pain medication specialist, Dr. Muhammad Ali, a treating physician at Walker Rural Services, and Dr. Tina Boshell, a chiropractor at the Boshell Clinic in Jasper, with chronic migraines. (R. 425).

On January 29, 2007, Dr. Ali examined the claimant because she complained of a burning and sharp pain in the lumbar area and mid back. The claimant also complained of pain in multiple joints that was aggravated by movement and cold weather.  Dr. Ali diagnosed the claimant with discogenic syndrome/Herniated Nucleus Pulpous in the lumbar spine, paraesthesia numbness, and arthralgia in the knee. He prescribed Celebrex, Lortab, and Lyrica for the claimant. (R. 228-29).

From 2007 to 2009, the claimant visited the doctor for unrelated issues to the impairments at issue. The next medical intervention for the impairments at issue were in 2009 when Dr. Ali ordered a MRI of the brain because of the claimant's worsening migraines. On November 4, 2009, the MRI revealed no abnormalities. (R. 201).

 Dr. Vanessa Ragland, a treating physician at Family Medical Associates, examined the

claimant on March 8, 2010 and ordered a lower back MRI because the claimant complained of back pain and a burning ice water sensation that went down her back. (R. 210). The MRI on the lower spine revealed disc desiccation at L5-S1, as well as a "posterior annular rent with minimal protrusion." (R. 203).

 On March 24, 2010, Dr. Ragland referred the claimant to Dr. Roger Ray, a treating physician. (R. 209). On April 13, 2010, Dr. Ray, a neurosurgeon at Valley Neurosurgery, recommended a lumbar decompression. (R. 317). On April 21, 2010, the claimant underwent a lumbar decompression on L3, 4, and 5 to treat ongoing back pain. (R. 356, 357).

On April 30, 2010, Dr. Ray noted the claimant was improving and put her on a walking program. (R. 316). On July 8, 2010, he recommended that the claimant receive physical therapy. (R. 314).

On July 13, 2010, Dr. Ray and Ponder Merrell, a physical therapist from Lakeland Community Hospital, stated the claimant jogged, instead of walked as instructed, and the claimant felt "that she aggravated things by doing that." (R. 259, 315). Lakeland Community Hospital discharged the claimant from physical therapy on September 3, 2010 because Dr. Ray noted that physical therapy made the claimant's pain worse. (R. 248, 313).

On December 12, 2010, the claimant went to the Emergency Room at Lakeland Community Hospital complaining of back pain and pain in the right leg and groin area. The physician at the emergency room, Ronald Graham, ordered a physical exam, CT scan, and medication to be administered to the claimant. (R. 285-96). The CT and MRI scan of the spine lumbar revealed anticipated postoperative changes in the lower lumbar spine. (R. 295, 312). The claimant was discharged on December 12, 2010 with instructions to follow up with Dr. Osman in

the morning or return to the Emergency Room for any new or worsening symptoms. (R. 292).

On December 13, 2010, the claimant returned to the Emergency Room at Lakeland Community Hospital complaining of the inability to move her right leg, pain in thigh, and numbness in calf area. After an exam, Gary Rhame, the emergency care provider, discharged the claimant on December 13, 2010. He instructed the claimant to follow up with Dr. Ray on December 14, 2010 for a MRI. (R. 298-306).

Dr. Ray ordered a CT scan and x-ray which showed post surgical roofing of L4 and L5 vertebrae and mild bulge of L5-S1 disc, without nerve root compression. (R. 354, 355). Dr. Ray recommended a lumbar epidural block because the claimant complained of pain in the right groin. (R. 310). On January 20, 2011, the claimant received a lumbar epidural steroid injection at Helen Keller Hospital. (R. 322).

The claimant saw Dr. Ray on March 17, 2011, complaining of low back pain and trouble sleeping. The exam results showed a negative straight leg raise test; no focal weakness; and a normal gait. (R. 336).

On March 20, 2011, the claimant returned to the Emergency Room at Lakeland Community Hospital with complaints of lower back pain. The nurse's notes at the Emergency Room indicated the claimant was screaming and holding her back, but walking with a normal upright gait. (R. 373-81).

Between March 31, 2011 and June 28, 2011, Dr. Ray examined the claimant three times. The claimant reported her low back pain was worsening. Dr. Ray recommended against additional surgery and determined that the lumbar MRI "looked better than expected showing primarily postsurgical changes." (R. 333-35). On August 4, 2011, the claimant visited Dr. Ray

and reported increasing pain in her right and left leg. A lumbar CT myelogram and x-ray performed on August 17, 2011 proved normal and showed no evidence of any canal stenosis. (R. 332, 347-48). The findings of the physical exams with Dr. Roger Ray on August 4, 2011 and August 23, 2011 revealed negative straight leg raising, no focal weakness, and a fair range of motion in low back. (R. 331-32).

On December 1, 2011, the claimant switched from Dr. Ali to Dr. Ragland for pain management. Dr. Ragland prescribed Nevrontin, Lortab, Baclofen, Ambren, and Keppra. (R. 427).

The week before December 16, 2011, the claimant had an episode that her family described as a seizure. Because the claimant had a history of migraines, Dr. Jeffery Long, a treating physician at Family Medical Associates, ordered that the claimant have an EEG that proved borderline normal. (R. 413). On January 9, 2011, Dr. Long referred the claimant to Dr. David Longmire, a neurologist in Russellville, AL, because of the abnormal EEG and seizures. (R. 411-19).

On January 13, 2012, the claimant called Dr. Long complaining of severe pain in both lower extremities and hip pain. The claimant wanted to know if the doctor could do anything different or if he could add to her medications to give her relief. Dr. Long referred the claimant to the Lakeland Community Hospital for an evaluation. (R. 410). The claimant went to the Emergency Room at the Lakeland Community Hospital with complaints of pain in right foot and pain that radiates up her right leg. Dr. Stephen Sanders, the physician in the emergency room, found swelling in the fifth metatarsal phalangeal joint and discharged the claimant with directions to follow up with Dr. Long in two to three days to recheck the claimant's complaints

8

of pain in right foot and leg. (R. 359-64).

On January 14, 2012, the claimant had a CT scan because of back pain. The scan revealed the lumbar spine was within normal limits. (R. 351). On January 16, 2012 the claimant had a MRI because of low back pain showing no evidence of any identifiable interval change.[1] (R. 350).

On January 24, 2012, the claimant saw Dr. Ray for a follow-up visit. The physical exam of the claimant showed that the claimant had a fair range of motion, no lumbar percussion tenderness, and negative lumbar spine x-rays. Dr. Ray prescribed physical therapy for the claimant and encouraged her to consider additional epidural blocks. (R. 330).

On March 7, 2012, Dr. Long completed the Functional Capacity Assessment.[2] He concluded that the claimant can sit a total of four hours in an eight-hour workday and walk a total of one hour in an eight-hour workday. Dr. Long further opined that the claimant must lie down for a total of two hours in an eight-hour workday and that she would miss more than 120 days of work, per year, for impairment-related reasons. (R. 434-54).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on April 23, 2012. (R. 24).

The claimant testified that she takes Keppra, Baclofen, Lortab, Lyrica, Depakote, and Imitrex. (R. 31). She stated that, even if she takes her medicine, her pain is still an eight on a

---

[1]  The record does not indicate who recommended the claimant to have the CT scan on January 14, 2012 and the MRI on January 16, 2012.

[2]  The record does not indicate at whose request Dr. Long completed the Functional Capacity Assessment.

scale of zero to ten. (R. 42).  The claimant said she tried injections, but they did not work. (R. 40). The claimant testified that she is able to sit for no more than fifteen to thirty minutes; stand for fifteen to twenty minutes without her back hurting; and very seldom lift the weight of a gallon of milk. (R. 31-33). She testified that her back pain has not affected her sleep. (R. 43). She stated that she lays down for two to three hours everyday; normally does not drive because she cannot drive for long periods of time; and requires help from her daughter, brother, or boyfriend to take care of her personal needs and chores. (R. 31, 42).

A vocational expert, Edward Pagella, testified concerning the type and availability of jobs that the claimant was able to perform. The ALJ asked Mr. Pagella to assume a person of the claimant's age, education, and work experience and skill with the following limitations: can do sedentary work; must have a sit/stand option at will; and could occasionally climb, crouch, crawl, stoop, and kneel. Mr. Pagella testified that, under those assumptions, an individual would be able to fulfill the requirements of a hand sorter, with 3,400 hand sorter jobs in Alabama and more than 95,000 nationally, and an assembler, with 4,200 assembler jobs in Alabama and more than 125,000 nationally. Mr. Pagella testified these jobs are all unskilled occupations at the sedentary level of physical tolerance. (R.45, 46).

Mr. Pagella testified that if an individual was off task more than fifteen percent of the work day at the unskilled types of jobs, she would be terminated from employment. Mr. Pagella stated that if an individual was absent more than twenty-one days in the course of a year at the unskilled types of jobs, she would be terminated from employment. (R. 46).

*The ALJ's Decision*

On August 24, 2012, the ALJ issued a decision finding that the claimant was not disabled

under the Social Security Act. (R. 17). First, the ALJ determined that the claimant met the insured status requirement. Next, the ALJ found that the claimant had not engaged in substantial gainful activity since the amended alleged onset of her disability. Third, the ALJ found that the claimant's spinal stenosis qualified as a severe impairment. (R. 11). However, the ALJ concluded that the claimant's carpel tunnel syndrome and seizure disorder constitute non-severe impairments, and that the rheumatoid arthritis and history of migraines constitute non-medically determinable impairments. (R. 12).

In reaching this conclusion, the ALJ noted that, despite the claimant's complaints of numbness and paraethesia in her hands, the December 8, 2010 physical exam of the claimant showed she had full and symmetric muscle strength and normal muscle tone without any atrophy. The ALJ found that the claimant's carpel tunnel syndrome only minimally impacts the claimant's ability to perform basic work activity.  Second, the ALJ noted that the claimant took the prescription anti-seizure medication Keppra, but that the medical evidence of record shows that the claimant complained of seizure activity only once. The ALJ indicated that findings of a November 2009 brain MRI proved normal and the results of a December 2011 EEG also proved borderline normal. The ALJ concluded that the claimant's seizure disorder does not more than minimally impact the claimant's ability to perform basic work activity. Third, the ALJ found no clinical or laboratory findings to substantiate a diagnosis of rheumatoid arthritis. Lastly, the ALJ noted that the claimant's treating chiropractor, Dr. Boshell, diagnosed the claimant with chronic migraines. The ALJ found that the treatment notes show infrequent complaints of migraine headaches from the claimant. The ALJ noted that a chiropractor does not constitute as an acceptable medical source within the meaning of the Regulations. Thus, the ALJ determined that

11

no acceptable medical source diagnosed the claimant with migraine headaches. (R. 12).

The ALJ determined that the claimant's spinal stenosis, though severe, did not meet the severity of a listed impairment because her spinal stenosis did not result in a compromise of the nerve root or the spinal cord.. (R. 12).

Next, the ALJ found that claimant had residual functional capacity to perform sedentary work, meaning that she could occasionally climb, crouch, crawl, stoop, and kneel; and the work permitted a sit/stand-at-will option. (R. 13). In reaching this conclusion, the ALJ applied the pain standard and found that the claimant's symptoms were consistent with the objective medical evidence. However, the ALJ found that, the claimant's statements about intensity of the symptoms were inconsistent with the objective medical evidence.  (R. 13-14).

First, the ALJ stated that the objective medical evidence was inconsistent with the claimant's allegations of disability. The ALJ noted that the physical exam with Dr. Ray from March 17, 2011[3] indicated that the claimant had no focal weakness and a normal gait. The ALJ pointed to the findings of the physical exams with Dr. Ray from August 4, 2011 and August 23, 2011, that revealed negative straight leg raising, no focal weakness and fair range of motion. The ALJ stated that the CT scan and x-ray/lumbar myelogram from August 17, 2011 proved normal and showed no evidence of any canal stenosis. The ALJ noted that the January 14, 2012[4] CT scan was within normal limits. The ALJ stated that the findings of the January 16, 2012 lumbar MRI showed no evidence of any identifiable interval change. The ALJ concluded that this evidence

_____

[3]  The ALJ must have mistakenly listed the date as March 7, 2011; however, the record reflects the date is March 17, 2011.

[4]  The ALJ must have mistakenly listed the date as January 2010; however, the record reflects the date is January 2012.

renders the claimant's allegations less than fully credible. (R. 14).

Second, the ALJ pointed to the fact the claimant's medical regimen and treatment history do not support the presence of impairments. The ALJ noted that claimant testified she took Keppra, Baclofen, Lortab, Lyrica, Depakote, and Imitrex. The ALJ noted that on January 20, 2011 the claimant underwent a lumbar epidural steroid injection. The ALJ pointed out that the claimant asserts her impairments are more limiting than found in the ALJ's decision, but her medication regimen and treatment history do not support the presence of impairments. (R. 15).

The ALJ gave little weight to the treating source opinion of Dr. Jeffrey Long. The ALJ submitted that Dr. Long reported on March 7, 2012 that the claimant can sit a total of four hours in an eight-hour workday and walk a total of one hour in an eight-hour workday. The ALJ noted that Dr. Long further opined that the claimant must lie down for a total of two hours in an eight-hour workday and that she would miss more than 120 days of work, per year, for impairment-related reasons. The ALJ pointed out that the x-ray/lumbar myelogram from August 17, 2011 proved normal and showed post-surgical changes. She stated that the results of the CT of the spine from August 17, 2011 showed post-surgical changes and no significant evidence of canal stenosis. The ALJ noted that the CT of the spine from January 14, 2012 proved the lumber spine was within normal limits. The ALJ indicated that the claimant's most recent physical exam with Dr. Roger Ray on January 24, 2012 indicated the claimant had a fair range of motion, no lumbar percussion tenderness, and negative lumbar spine x-rays. The ALJ concluded the objective medical evidence failed to support Dr. Long's opinion. (R. 15).

The ALJ determined that the claimant is unable to perform any past relevant work because the exertional/non-exertional demands of the claimant's past relevant work exceeds that

of the claimant's residual functional capacity. (R. 15, 16). The ALJ then determined that claimant was a younger individual with at least a high school education, and that transferability of job skills was not material to the determination of disability. (R. 16).

The ALJ found that jobs exist in significant numbers in the national economy that the claimant can perform. In reaching this conclusion, the ALJ considered the claimant's functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. Based on the expert testimony of the vocational expert, Mr. Pagella, the ALJ determined that, considering the factors mentioned above, the claimant could work as a hand sorter or assembler and that those jobs exist in significant numbers in the national economy. (R. 16). Finally, the ALJ found that the claimant was not under a disability as defined in the Social Security Act from January 6, 2011 through August 24, 2012. (R.17).

## VI. DISCUSSION

The claimant argues that substantial evidence does not support the ALJ's decision and that she used improper legal standards. The claimant contends the ALJ erred in two ways: (1) by improperly rejecting the treating physician Dr. Jeffrey Long's medical source opinion; and (2) improperly applying the Eleventh Circuit's pain standard. To the contrary, this court finds that substantial evidence supports the ALJ's rejection of Dr. Long's opinion and her application of the pain standard.

**A. The ALJ properly rejected Dr. Long's medical source opinion.**

The claimant argues that the ALJ improperly rejected treating physician, Dr. Long's, medical opinion. The claimant contends the ALJ acted as her own medical expert to cite evidence that she thought contradicted the opinions of trained medical professionals who had the

14

opportunity to personally examine the claimant. (Pl.'s Br. at 11). However, this court finds that the ALJ owed no deference to Dr. Long's medical opinion because the ALJ explained that Dr. Long's opinion is not supported by the medical evidence in the record.

The Commissioner must accord the opinions of the treating physician substantial or considerable weight, and unless recounting *good cause* to the contrary, the commissioner cannot discount the treating physician's opinions. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998). Good cause exists if the physician's opinion is not supported by evidence; the evidence supports a contrary finding; the physician's opinion is conclusory; or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); 20 C.F.R. § 416.927.

The ALJ articulated specific reasons for failing to give the opinion of Dr. Long controlling weight, and she supported those reasons with substantial evidence. The ALJ noted that Dr. Long's Functional Capacity Assessment alleged that the claimant can sit a total of four hours in an eight-hour workday, walk a total of one hour in an eight-hour workday, lie down for a total of two hours in an eight-hour workday. The ALJ properly reasoned that the objective medical evidence failed to support Dr. Long's opinion. The ALJ pointed out that the CT scans of August 17, 2011 and January 14, 2012 proved normal. The ALJ also pointed out that the claimant's most recent physical exam indicated no lumbar percussion tenderness and a fair range of motion of the low back. The ALJ correctly noted that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in the decision." (R. 15).

Because the ALJ found Dr. Long's opinion was not supported by the objective medical

15

evidence, she did not err in giving Dr. Long's opinion little weight.

**B. The ALJ properly evaluated the claimant's subjective complaints of pain.**

The claimant argues that the ALJ improperly applied the Eleventh Circuit's pain standard.
To the contrary, this court finds that the ALJ properly applied the pain standard and that
substantial evidence supports her decision.

The pain standard applies when a claimant attempts to establish disability through his or
her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223
(11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition
and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising
from that condition *or* (3) that the objectively determined medical condition is of such a severity
that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A
claimant's subjective testimony supported by medical evidence that satisfies the pain standard is
itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.
1995).

In applying the standard, if the ALJ decides not to credit a claimant's subjective
testimony of pain, she must discredit it explicitly and articulate her reasons for doing so. *Brown
v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for
discrediting the claimant's subjective complaints of pain requires that the testimony be accepted
as true. *Id*.

In this case, the ALJ conceded that the claimant's medically determinable impairment
could reasonably be expected to cause the alleged symptoms; however, she found that the
claimant's statements concerning the intensity, persistence, and limiting effects of these

16

symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. (R. 14). The ALJ explicitly articulated her reasons for discrediting the claimant's alleged severity of pain.

First, the ALJ stated that the objective medical evidence was inconsistent with the claimant's allegations. The ALJ noted the physical exams with Dr. Ray from March 17, 2011, August 4, 2011, and August 23, 2011, revealed no focal weakness, a fair range of motion in the low back, a negative straight leg raise test, and a normal gait. She also noted that the CT scans taken on August 17, 2011 and January 14, 2012 proved normal. Additionally, she noted that the findings from the January 16, 2012 lumbar MRI showed no evidence of any identifiable change. The ALJ pointed out that the claimant testified she must lie down for two hours a day to alleviate back pain, and nothing in the medical evidence supported the claimant's testimony. The ALJ properly concluded that, "since the alleged onset date, imaging of the claimant's lumbar spine repeatedly showed either minimal or normal findings." (R. 14).

The ALJ discredited the claimant's impairments because her medical regimen and treatment history did not support the presence of disabling impairments. The ALJ referenced that fact that the claimant testified to taking Keppra, Baclofen, Lortab, Lyrica, Depakote, and Imitrex, and noted that the claimant underwent only one lumbar epidural steroid injection. The ALJ correctly stated that the treatment and medication regimen the claimant received does not support a finding that her impairments are so limiting to a degree of disability.

Based on the explicit findings of the ALJ, this court concludes that she properly applied the Eleventh Circuit's pain standard and that substantial evidence supports her decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 24th day of September, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE